```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANNUITY, PENSION, WELFARE, AND
TRAINING FUNDS OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS, LOCAL
14-14B, AFL-CIO, et al.,

                         Plaintiffs,                    REPORT AND
                                                        RECOMMENDATION
     -against-
                                                        07-CV-2257 (DLI) (JMA)

NORTH AMERICAN IRON WORKS, INC.,

                         Defendant.
-------------------------------------------------------------------X
```

A P P E A R A N C E S:

James Michael Steinberg
Brady McGuire & Steinberg, LLP
603 Warburton Avenue
P.O. Box 176
Hastings-on-Hudson, NY 10706
(914) 478-4293
    *Attorney for Plaintiffs*

Harry Schochat, Esq.
8 Lunar Drive
Woodbridge, CT 06525
(203) 397-1172
    *Attorney for Defendant*

**AZRACK**, **United States Magistrate Judge:**

    By order dated July 11, 2007, the above-captioned action was referred to me by the Honorable Dora L. Irizarry for a report and recommendation on plaintiffs' application for damages, interest, attorneys' fees and costs. For the reasons set forth below, I respectfully recommend that the plaintiffs be awarded a total of $26,868.97.

1

## I. FACTUAL BACKGROUND

Plaintiffs are trustees of the annuity, pension, welfare, and training funds (the "funds") that provide benefits to the members of the International Union of Operating Engineers, Local 14-14B, AFL-CIO ("Local"). Defendant, North American Iron Works, Inc., employed three Local members during the relevant period. (Compl. ¶13; Pl. Ltr., dated Jun. 27, 2008, Ex. A. ("Audit Report").) Under the terms of the Collective Bargaining Agreement ("CBA") and fund agreements in effect between the parties, defendant was obligated to make regular contributions to the funds. (Steinberg Aff. Supp. Default Ex. B–C.) However, from July 1, 2004 through June 30, 2006, defendant failed to contribute to the funds as required. (Compl. ¶23; Audit Report.) Plaintiffs commenced this action to recover the delinquent contributions on June 5, 2007 under §1145 and §1132 of the Employment Retirement Income Security Act ("ERISA"), (Compl. ¶1.) Defendant failed to timely answer or otherwise defend the action and plaintiff moved for default judgment on liability and damages. On July 11, 2007, default judgment on liability was entered against the defendant and the Honorable Dora L. Irizarry referred plaintiffs' motion for default judgment on damages and other relief to me for report and recommendation. See Civil Docket Sheet for 07-CV-2257.

Defendant twice ignored plaintiffs' prior attempts to conduct an audit. Therefore, in order to develop a basis upon which to calculate damages, I ordered defendant to submit its payroll books and records to plaintiffs for an audit and further directed plaintiffs to serve the order upon defendants by personal service.[1] Defendant submitted to the audit order. (Pl.'s Ltr., dated Feb. 14, 2008.) Defendant also produced evidence of twelve checks that it had issued throughout the contribution period for the purpose of fulfilling its obligation to the funds.

---

[1] These records were necessary to determine damages because, under the CBA, defendant's contribution obligation is based upon the number of hours worked by the member employees. (Compl. ¶17.)

(Def's. Ltr., dated May 7, 2008.) Defendant had made the checks payable to the Local but had erroneously hand-delivered them to a member employee, Ronald Cosban, instead of to the Local office.[2] (Def's. Ltr., dated May 7, 2008.) Mr. Cosban cashed the checks and kept the money for himself instead of turning it over to the Local. (Pl. Ltr., dated Jun. 27, 2008).

Plaintiffs completed an audit of defendant's payroll records and accordingly revised their demand for relief. (Audit Report.) Their revised statement of damages also gives defendant credit for some of the checks erroneously delivered to and cashed by the member employee.[3] (Audit Report.) Plaintiffs now seek a total of $29,782.81, which consists of $19,108.19 in delinquent fund contributions, $2,292.98 in interest, $3,821.64 in liquidated damages, $3,990.00 in attorney's fees, and $570.00 in costs. (Steinberg Aff. Supp. Damages). Defendant has not submitted any objection or contrary tabulation of damages to the Court.

## II. DISCUSSION

### A. Liability

Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The funds are employee benefit plans under ERISA, 29 U.S.C. §§ 1002(2) and 1132(d)(1), and defendant is an employer as defined by ERISA, 29 U.S.C. §§ 1002(5), §1145. Plaintiffs, as trustees, are fund fiduciaries empowered to bring the action on behalf of the fund by ERISA, 29 U.S.C. § 1132(a)(3). Accordingly, defendant's obligations to

---

[2] Under the terms of the CBA, defendant should have purchased contribution stamps from the Local office rather than delivering checks directly to the employee. (Def. Ltr., dated May 7, 2008.)

[3] Defendant was given credit for seven of the twelve checks it produced. Plaintiffs explained that they could not give credit for the five remaining checks because they were either made out to "cash" or to Mr. Cosban or because plaintiffs could not determine who cashed the check. (Audit Report.) I find plaintiffs' unopposed explanation of credits reasonable.

the funds under the CBA and the fund agreements are enforceable under ERISA. Defendant was obligated by the CBA to make monetary contributions to the funds, yet failed to do so. Thus, pursuant to ERISA, defendant is liable to the funds. 29 U.S.C. § 1145.

**B. Damages**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Alcantara, 183 F.3d at 155 (internal citations omitted). Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit permits the Court to hold an inquest by affidavit, without a hearing, as long as the Court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fed. R. Civ. P. 55(b)(2)) (internal citations omitted). Under ERISA, a prevailing plan suing to recoup unpaid contributions is entitled to an award for unpaid contributions, interest, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

In support of their request for relief, plaintiffs submitted (i) the CBA and fund agreements in effect between the parties; (ii) statement of the fund contribution collection procedures; (iii) an adjusted audit of defendant's payroll records reflecting credits for contribution checks erroneously issued to the member employees; (iv) invoices for attorney services; (v) a statement of costs; and (vi) the supporting affirmation of attorney James Steinberg, plaintiffs' counsel. I consider these submissions sufficient to determine an award of damages.

**1.** *Delinquent Contributions and Interest*

Plaintiffs request $19,108.19 in unpaid contributions and $2,298.98 in interest. In support of their request, they submitted an audit report that, pursuant to the terms of the CBA, tabulates the

amount of defendant's delinquency based upon the number of hours worked by each Local member and the effective trust fund contribution rates during the relevant periods.[4] I have carefully reviewed the report and find that the calculations are accurate and that the report is a sound basis upon which to determine damages. However, according to the report, the sum of $19,108.19 already includes $2,198.06 in interest, calculated at a rate of 6% per annum during the duration of the delinquency. Consequently, plaintiffs request for an additional $2,298.98 amounts to a request for interest upon interest, which plaintiffs are not entitled to under ERISA. Therefore, I recommend that plaintiffs be awarded $16,910.13 in unpaid contributions and $2,198.06 in interest. I further recommend that plaintiffs' request for an additional $2,298.98 be denied.

**2.** *Liquidated Damages*

Under ERISA § 1132(g)(2)(c), plaintiffs are additionally entitled to the greater of (i) interest paid on the unpaid contributions or (ii) liquidated damages provided for under the plan so long as it does not exceed twenty percent of the unpaid contributions. The terms of the CBA entitle plaintiffs to the full twenty percent of the unpaid principal. (Steinberg Aff. Supp. Default ¶2(c).) Plaintiffs have asked for $3,821.64 in liquidated damages. This sum represents twenty percent of $19,108.19, which, as discussed above, includes interest as well as unpaid contributions. However, under ERISA, liquidated damages may not exceed twenty percent of the *principal* unpaid contributions. Therefore, I recommend that plaintiffs be awarded twenty percent of $16,910.13 for a total of $3,382.03 in liquidated damages.

---

[4] Plaintiffs failed to provide the Court with documentation substantiating the fund benefit rate and number of work hours used in the audit report. However, I accept Attorney Steinberg's unopposed affirmation as sufficient proof of the accuracy of the figures. It should also be noted that defense counsel was present at the audit and did not contest the rate or number of work hours used. (Def. Ltr., dated May, 7, 2008).

### 3. *Attorney's Fees and Costs*

a. **Fees**

Section 1132(g)(2)(D) of ERISA mandates the award of attorneys' fees. In the Second Circuit, attorney's fees for federal claims are determined according to the "presumptively reasonable fee" approach, which is calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186–90 (2d Cir. 2008). The Court has "considerable discretion" in determining the presumptively reasonable fee, however, it should "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."[1] Id. at 190 (emphasis in original). Ultimately, the district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Id. at 184, 192.

---

[1] Case-specific variables identified by the Second Circuit include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill, 522 F.3d at 184. The Second Circuit also suggests considering the twelve factors delineated in Johnson v. Ga. Highway Express, 488 F.2d 714 (5th Cir. 1974). Id. at 190. The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

The fee applicant bears the burden of establishing the reasonableness of the hourly rate and the number of hours expended. New York State Teamsters Conference & Ret. Fund v. Erick Sanitation, No. 92-CV-0292, 1992 WL 246880, at *4 (N.D.N.Y. Sept. 18, 1992). However, the district court may also rely upon its own knowledge of "the prevailing market rates in the relevant community for similar services for lawyers of reasonable comparable skill, experience and reputation." Chambless v. Masters, Mates, and Pilots Pension Plan, 885 F.2d 1053, 1058–59 (2d Cir. 1989). In determining the reasonableness of the hours expended, the Court must assess "the value of the work product of the particular expenditures to the client's case." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998). "If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" Id (internal citations and quotation marks omitted).

Plaintiffs request $3,990.00 in attorney's fees and have submitted contemporaneous time records that detail the tasks their attorney, James Steinberg, completed for this case and the number of hours he expended on each task. Mr. Steinberg worked on the case alone. He charged $285 per hour for all tasks, whether substantive, such as preparing motions, or administrative, such has filing and mailing papers and scheduling meetings.

Plaintiffs did not submit any evidence of prevailing market rates. However, in other similar ERISA cases in which the instant plaintiffs were also represented by Mr. Steinberg, the Court awarded attorneys' fees at the same or similar rate. See, e.g., Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Star Structural, Inc., No. 07-CV-876, 2008 WL 817915 at *3 (E.D.N.Y. March 26, 2008) (awarding fees at $285 per hour); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C, 15D, AFL-CIO, ex rel. Callahan v. New York Recycling, Inc., No. 06-CV-0781, 2007 WL 2591222, at *4 (S.D.N.Y. Aug. 2, 2007)

(awarding fees at $250 per hour); Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. A.J.S. Trucking & Excavating Corp., No. 06-CV-0701, 2007 WL 539152, at *4 (E.D.N.Y. Feb. 16, 2007) awarding fees at $250 per hour).[5]

Moreover, $285 per hour is comparable to the rates awarded in other default ERISA contribution cases in New York. See, e.g., LaBarbera v. J & A Concrete Corp., No. 01-CV-1731, 2008 WL 918244, at *3 (E.D.N.Y. Apr. 1, 2008) (awarding $275 per hour); LaBarbera v. D & R Materials, Inc., No. 06-CV-2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (approving rate of $340 per hour); King v. STL Consulting, LLC, No. 05-CV-2719, 2006 WL 3335115, at *7–8 (E.D.N.Y. Oct. 3, 2006) (awarding fees at $275 per hour); Mingoia v. Crescent Wall Sys., No. 03-CV-7143, 2006 WL 687264 (S.D.N.Y. Aug. 23, 2004) (awarding fees at $325 per hour). Therefore, I find that a rate of $285 per hour for substantive legal work is reasonable.

In addition to substantive legal work, Mr. Steinberg also conducted administrative tasks such as electronic filing, mailing papers to opposing counsel, and scheduling meetings. I find that $285 per hour for these routine tasks is unreasonable. Since they are more akin to paralegal rather than attorney work, I find that a reasonable rate for these tasks is $70 per hour. See, e.g., Finkel v. INS Elec. Services Inc., No. 06-CV-4862, 2008 WL 941482, at *10 (E.D.N.Y. Apr. 4, 2008) (awarding $75 per hour for paralegal work); No. LaBarbera v. ESL Home Remodeling Inc., No. 06-CV-1372, 2007 WL 708359, at *6 (E.D.N.Y. Feb. 28, 2007) (awarding $70 per hour for paralegal work); Finkel v. Tech Man, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for paralegal work).

I have carefully reviewed the invoices submitted by plaintiffs and find them to be a reasonable basis upon which to determine the number of hours expended. According to the

---

[5] It appears from the prior cases that Mr. Steinberg increased his fee by $35.00 per hour between 2007 and 2008. I find this to be a reasonable increase.

invoices, Mr. Steinberg expended a total of fourteen hours on this case. Based on the description of the tasks contained in the invoices, I find that 13.25 of these hours were expended on substantive work and .75 hour was spent on administrative tasks. This is a reasonable amount of time to spend on a case of this nature. See, e.g., LaBarbera v. Interstate Development Group, Inc., No. 07-CV-2052, 2008 WL 858985, at *8 (E.D.N.Y. Mar. 31, 2008) (awarding fees for 19.18 hours of attorney time and 14.98 hours of paralegal time in ERISA default); Marton v. HST Roofing, Inc., No. 03-CV-4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb.22, 2007) (awarding fees for 20 hours of attorney time and five hours for paralegal time in ERISA default); LaBarbera v. David Liepper & Sons, Inc., No. 06-CV-137, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.7 hours reasonable for an ERISA default); Del Turco v. Carrara Contractors, Inc., No. 03-CV-5538, 2006 WL 1783632, at *3–4 (E.D.N.Y. June 23, 2006) (awarding fees for 25.05 hours for attorneys and 2.6 hours for legal assistants in ERISA default).

At a rate of $285 per hour, the fee for substantive tasks comes to $3776.25. At a rate of $70 per hour, the fee for administrative tasks comes to $52.50. Therefore, I respectfully recommend that plaintiffs be awarded a total of $3828.75 in attorneys' fees.

b. **Costs**

ERISA also directs the Court to award reasonable costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request $570 in costs, which consists of a $350 filing fee, a $200 process service fee, and a $20 statutory fee. The filing and process service fees are both substantiated by accompanying invoices and I find them to be reasonable. The affirmation neither indicates the meaning of the statutory fee nor includes proof that it was incurred and I do not recognize it. I recommend that it be withheld from the award for costs. See, e.g., LaBarbera v. Abbey Tool & Indus. Supply Co., No. 07-CV-3114, 2008 WL 4198546, at *8 (E.D.N.Y. Sept. 5, 2008) (denying costs request for $20 statutory fee in ERISA case); Interstate Development Group, Inc.,

No. 07-CV-2052, 2008 WL 858985, at *9 (same); <u>Annuity, Pension, Welfare and Training Funds of the International Union of Operating Engineers, Local 14-14B, AFL-CIO v. Drama Construction Corp.</u>, No. 06-CV-6148, 2007 WL 1827830, *3 (E.D.N.Y. June 22, 2007) (denying $20 statutory fee to instant plaintiffs in similar case). Therefore, I respectfully recommend an award of $550 in costs.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that a judgment of $26,868.97 be entered against defendant. This award reflects a principal sum of $16,910.13 in unpaid contributions, $2,198.06 in interest, $3,382.03 in liquidated damages, $3828.75 in attorneys' fees and $550 in costs. Plaintiffs are hereby ordered to serve a copy of this Report and Recommendation on defendant and to promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the date of entry of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

      SO ORDERED.


Dated: October 3, 2008
      Brooklyn, New York


                                             /s/
                                  JOAN M. AZRACK
                                  UNITED STATES MAGISTRATE JUDGE